The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zienoff presiding. This is 4-24-1521, People of the State of Illinois v. Tony Harris. Would counsel for the appellant identify yourself for the record, please? Edward Wittrig for the appellant, Mr. Tony Harris. And would counsel for appellee identify yourself, please? David Friedland, counsel for the appellee, People of the State of Illinois. Thank you. At this time, Mr. Wittrig, you may begin your argument. Thank you, Your Honor. Your Honors, may it please the court, counsel, my name is Edward Wittrig. I'm with the Office of the State Appellate Defender. I represent the appellant, Mr. Tony Harris, in this case. Your Honors, at Mr. Harris's jury trial, the circuit court, the state, and even his own defense counsel, effectively deprived the jurors of their ability to accurately answer this critical question of whether Harris knowingly discharged the firearm at Officer Logan. First, the circuit court precluded the jurors from even considering the question of whether Harris knowingly discharged the firearm, instead of recklessly doing so, taking away a viable defense to the charge. Second, the circuit court prevented the jurors from weighing the fact that the state's critical witness, that's Reginald Anderson, previously received consideration in this case for testifying against Harris. Third, the state then misled the jury on Harris's purported confessions and on the science of the muzzle flashes to create these baseless arguments in support of its theory that Harris, excuse me, discharged the firearm at Officer Logan. And then finally, Harris's own defense counsel failed to review the trial transcripts from the first trial in order to decide whether or not to impeach the state's witnesses with their inconsistencies between the trials. So as a result, the jurors were impeded in their ability to accurately answer this critical question of whether Harris knowingly discharged the firearm at Officer Logan, as they were without critical information and instructions on this issue. So addressing these claims in a little bit more detail, and I'm going to take argument one first. The circuit court was required to submit instructions on the lesser-included offense of reckless discharge of a firearm. To be sure, the circuit court must instruct the jurors on a submitted lesser-included offense instruction when there is some evidence in the record that, if believed by the jury, would reduce the crime from the greater offense to the lesser offense. This is not a high barrier. And even when there's only slight evidence, it may not be credible evidence, but slight evidence in the record to support giving the instruction, the circuit court does not have discretion to refuse it. Good morning, counsel. Excuse me. On that issue and that question, or on this issue, I do have a question. Here, with respect to the evidence, we know that the defendant himself never claimed that he fired the gun. Now, wouldn't that be necessary for the trial court to have known that as evidence, if he were to have given that or decided to give that instruction? No, no, Your Honor. There is no requirement that the defendant admit to the conduct in question. And I cite multiple cases in the reply brief to the effect that the question is whether or not there is some slight evidence in the record. And that can come from any source. It can come from the state's exhibits. It can come exclusively from the state's evidence. So there's no requirement that a defendant acknowledge that, in this case, shooting the firearm, as long as there is some slight evidence that would allow the jury to find the lesser-included offense and still acquit of the greater offense, Your Honor. And so looking at the evidence here, there was enough evidence before the jurors that they could act rationally in acquitting Harris of aggravated discharge of a firearm, yet still find him guilty of this lesser offense of reckless discharge of a firearm. So looking at the evidence that was before the jurors, there was no concrete evidence that the firearm was pointed or aimed at Officer Logan. In addition, Officer Logan himself did not know where the firearm was aimed. He did not know how the firearm was handled or the manner in which it was discharged. And there was no objective evidence presented on how the firearm was discharged either. There's no recording of the shooting. There's no bold or bold strikes located near Logan's that would permit an inference that he was actually being shot at. And then contrary to that, at the first trial, Harris did testify that the shooter discharged a firearm into the air, and a transcript of his trial testimony from that first trial was submitted to the jurors for them to consider without any limitation and without any specific instructions on how they had to handle that. So even if Harris indicated that he knew that the direction of the firearm was in the air from talking with others, and specifically Austin Wood was the person that Officer Logan was chasing that night and the person that Harris alleged was a shooter, there is no limiting instruction on how the jurors could consider that information. They could use it for whatever purpose they want. This is the state's own exhibit. And so there was at least some evidence before the jurors that the firearm was discharged in the air. But even discharging a firearm into the air would create a substantial risk to Officer Logan that night. The aerial map that was also submitted by the state showed that there were numerous structures and trees in the area, and this could create a potential risk of ricochets that, if not actually striking Officer Logan, would at least endanger him. And so given this lack of evidence on one hand, that the gun was actually aimed at Officer Logan, and then on the other hand, there being some slight evidence before the jury that the firearm was discharged in the air, the jury rationally could convict Harris here of just reckless discharge of a firearm and yet still acquit him of this greater offense of aggravated discharge of a firearm. And I would ask this court to consider its decision in People v. Jones. There was a 2025 case cited in the opening reply briefs. In that case, the victim, like here, did not know where the firearm was pointed when it was discharged. I believe in that case she had either closed her eyes or was turning away when the firearm was discharged. And here Officer Logan had, from his own testimony, admitted he did not know where the firearm was pointed or aimed, as he could not see given the lack of visibility in the area. And there was no objective evidence in either case of how the firearm was discharged or where it was pointed. And under those circumstances, this court in Jones determined that based on the victim's testimony, where she did not know where the firearm was pointed, the jury could have rationally acquitted the defendant of aggravated discharge of a firearm and yet still found him guilty, and I believe actually did in that case, of reckless discharge of a firearm. So under Jones, there's at least the slight minimal evidence necessary for this to become a jury question, and the circuit court reversibly erred in taking that away from the jury. Now, I do ask that this court review for plain error on that issue. And specifically, I am arguing that the evidence was really close on whether Harris knowingly discharged the firearm at Officer Logan. This at Officer Logan is the key point I raise here on appeal. To reiterate, Logan did not see the shooter. He did not observe where the firearm was pointed. He did not hear bullets whizzing by him or striking near him, which would indicate that the gun was directed at him when it was fired. There's no video recording of the actual shooting to show where the firearm was pointed when it was discharged. And there's no animosity between Logan and Harris that would infer that the shooting had to be intentionally directed at him. In fact, the jury actually acquitted Harris of the attempted murder charge in this case. Now, it is true that the state did provide some evidence from witnesses that claim that Harris admitted to discharging the firearm, but there's no objective evidence that Harris admitted to making those disclosures, and so it still relies on the witness's credibility, and that's important in a closely balanced analysis. And the credibility of these witnesses was challenged both at trial and on appeal. And even if we accept that the state's witnesses testified truthfully, for the most part, they only established that Harris acknowledged shooting the firearm, not that he admitted to shooting the firearm at Officer Logan. So if we quickly go through these witnesses, Whitney Parrott was friends with Wood, and she wasn't friends with Mr. Harris, and so she'd be motivated to protect her friend. He was impeached with prior convictions for unlawful use of a weapon, among others, and he'd also be motivated to blame Mr. Harris for the shooting to deflect any suspicion from himself, as he's the one being chased by Officer Logan that night, and also Harris is, alleging that he is the shooter. Detective McDaniel. Excuse me, Counsel. Just to interject on a point you made just a minute ago. Didn't the defendant admit when he was in the presence of a second police officer that if he had wanted to kill Logan, he certainly could have? So wasn't that, in essence, an admission that he had shot at Logan? No, Your Honor. So that was Detective McDaniel. There was an allegation that he stated to Detective McDaniel that it was an easy shot, and if he wanted to kill him, he could have done so. I think the clear inference from that statement, though, even if we accept that this occurred, is that he didn't shoot at Officer Logan. If it was an easy shot and he could have harmed him, and if he did so and Logan was unharmed, I think that creates the inference that he didn't discharge it at Officer Logan. And also, in this closely balanced analysis, he denied making that allegation to Detective McDaniel, and that was submitted to the jurors in the transcript from his testimony, and so the jurors had an alternative version to McDaniel's testimony. And not only that, it's not implausible that his account that he denied making that statement, he had just asserted his Miranda rights, and so it's plausible that after asserting and knowing that he has these rights, that he would continue to maintain them as he's being escorted from the station. Counsel, as you've addressed Justice Zinoff's question, there's also the situation where Anderson, I think in the bullpen over here, is the defendant talking to another, and he says he busted at a police officer, something to that effect, and that that type of language is known to be shooting at. How do you deal with that evidence? Yes, Your Honor, for the closely balanced analysis specifically, Anderson did testify to that effect. He basically said that when Harris was speaking with someone else, I believe it was later identified as Eugene Haywood, that he made this statement. But again, Harris specifically denied making that statement in the trial transcript that was submitted to the jurors, so they have a counterversion. And then the state never called Haywood to corroborate that Anderson actually overheard these allegations. And then Anderson's credibility was also challenged by the fact that he had prior convictions for urgent retail theft, and I believe he said he had other felony convictions, but he didn't provide a name for what they were. And so in the end, I would ask that this was a very close case on this critical issue of whether or not the firearm was actually discharged at Officer Logan, and I ask this court review argument one for plain error. And so if there are no other questions, I'm going to turn to argument two. All right. For argument two, the circuit court reversibly erred in preventing the defense from cross-examining Anderson here on the plea agreement that he struck with the state in exchange for his testimony that was used against Harris at the first trial. Now, circuit courts should afford the defense the widest latitude, especially in criminal cases, Your Honors, when they're trying to cross-examine a witness to establish possible bias or motivations to testify in a case. And so I cite the United States Supreme Court Davis v. Alaska in the opening brief for the principle that the exposure of the witness's partiality of mind at some former point in time to trial may be used as a basis of an argument that the witness had the same partiality while testifying against the defendant. And so applying that general principle in this case, there's no dispute that Anderson was allowed to plead guilty to a lesser charge when he was in custody, and I believe the lesser charge was felony retail theft, in exchange for testifying against Harris and claiming that he made these omissions. So, in fact, Anderson was quite clear during the first trial that he did receive consideration in this case, and he agreed with defense counsel's characterization of him as a jailhouse informant or snitch. But the circuit court prevented the defense from cross-examining Anderson about this agreement at all during Harris's second trial and how these allegations against Harris even came to be. And so even though some time had passed between the first and second trials, this agreement shows that Anderson was motivated to blame Harris for the shooting in the first place, and he did so in order to receive leniency in his own case. It also demonstrates to the jurors that Anderson was not some disinterested witness who was only coming forward out of the goodness of his own heart, but that he actually had a direct interest and motivation to blame Harris for the shooting, and he had a direct interest in maintaining these at the second trial. The state still held leverage over Anderson at the second trial, given that he would commit perjury in front of the prosecutors if his testimony deviated in a material way from the testimony that he gave at the first trial. And so Anderson was effectively locked into this testimony that blamed Harris for the shooting and he would expose himself to criminal liability if he disavowed it, and he'd be at the mercy of the state at the second trial. So the record is clear that Anderson had a direct interest in maintaining this testimony against Harris from the first trial, and the circuit court erred in refusing to allow the defense to cross-examine him on that issue. And I would ask that this court look at P. W. Harris, a different Harris. It's a 2021 case that's cited in the opening reply briefs where this court determined that the circuit court erred in preventing the defense from cross-examining the witness about his conviction and sentence that arose about five years prior to trial, a similar time frame to this trial, and the witness in that case received a significantly reduced sentence after they wrote letters that implicated the defendant. And the state, like here, tried to argue that this evidence about the witness's prior conviction and reduced sentence from five years ago was too remote or uncertain, and so the witness had nothing to lose from his testimony. And this court rejected that and found that it was error for the circuit court to exclude the defense from exploring that issue before the jurors, and this error isn't harmless. Anderson's a critical witness for the state. He is the only witness that can connect Harris to shooting at Officer Logan. The state introduced no other evidence that the gunshots were directed at Officer Logan except for Anderson, and so the state is using Anderson to paper over this large gap in their evidence that was presented to the jurors. But the state then was allowed to present Anderson, who's a jailhouse informant, to the jurors without disclosing his status as a jailhouse informant who received consideration for testifying against Harris. And so there's an inherent suspicion that's directed at jailhouse informants, and the only reason that this testimony is allowed to go before the jurors is that we're confident that jurors, when they're considering the witness's testimony, if they receive the information about the agreement, they can use that to effectively determine whether or not this witness is being reliable. But here they were never given that information, so they couldn't effectively analyze Anderson's credibility. And again, this is a very close case on whether or not the evidence supports the conclusion that Officer Logan was shot at. So I would also like to, with the time I have remaining here, move on to Argument 3. The state provided no evidence that on the path or the trajectory of the bullets in this case, and despite that complete lack of evidence on that matter, the state concocted an argument that somehow the muzzle flashes provided objective evidence that the gun was actually being directed at Officer Logan. And then they further added that their gun expert, Officer Johnson, could testify about the science behind that evidence. But when you read Johnson's testimony, he explained that muzzle flashes are like quick firecracker flashes or explosions of light, and that it would actually be difficult to discern an exact shape, given how quickly these muzzle flashes appear and dissipate. Nonetheless, he did opine in theory that this firecracker flash of light would be more circular if it would be pointed at the viewer and more linear if it was to the side of the viewer. But the problem for the state in this case is that Logan never testified about the shape of the muzzle flash or its direction. When he was questioned, he was questioned about their intensity. He was questioned whether or not they blinded him or dazzled him or something to that effect, and he denied that they did so. And he said instead of, like he wasn't, he was not, it didn't illuminate the whole area. Instead, it was just a brief burst of flame. So he didn't testify that muzzle flashes were more circular or more linear. He didn't, he actually denied that he was able to decipher the direction of the gunshot from the muzzle flash. He was clear in his testimony about that. And then, and so the state's muzzle flash science claims hold without evidentiary support and should not have been advanced before the jurors, especially in rebuttal where the prosecutor misstated Johnson's testimony by saying a muzzle flash coming at the viewer would look like a burst of light, maybe cone or line of light. But Johnson didn't testify in that way. And so the prosecutor is taking his testimony that pertained to all muzzle flashes and claimed that that somehow was evidence in this case that the gunshot was directed at Officer Logan. And I don't believe the state even contests that the state, excuse me, that the prosecutor's rebuttal argument was actually a correct factual representation of Johnson's testimony. Council, I'd like to follow up on that. Now that you brought that up, that's an interesting topic because it's, you know, it's hard for us to get into the mind of the trial court, but in denying the reckless jury instruction, the court's comment, well, I'll just read it quickly. Defendant has now got the gun. He's at the corner of the store there at the dumpster where he can see the officer. Three shots are fired. And for me to find that those are reckless is a leap I'm not willing to take. So the court seems to have. And again, it's hard to get into the mind of the court just with those comments, but the court seems to have accepted the state's argument with respect to those muzzle flashes, that the shots were fired in the direction of the officer. Can you comment on that? The muzzle flashes, and I see that I'm out of time. Can I answer your question, Your Honor? I would say yes. Okay. I can answer the question. Sorry about that. It's okay. And so the muzzle flashes, there is no evidence when you look at Logan and Johnson's testimony together that the muzzle flashes were actually directed at him. Logan denied that he could tell the direction of the muzzle flashes, or the angle of the discharge from the muzzle flashes. And he specifically denied that he knew what gun was aimed that night either. And the fact that there were three gunshots, or that they occurred when the officer stepped in the light, these would be equally indicative of the shooter firing warning shots in the air as they would be that they were actually discharging the firearm at the officer. If I may ask another question, the court seems to take the leap, and, again, it's difficult to know just what the court was thinking in announcing its ruling, but the court indicates that in this circumstances he cannot tender a reckless instruction, which seems to suggest that the court accepted the state's hypothesis on the aiming of the shots. Do you follow me? Yeah. If the circuit court did so, it would be wrong against the evidence that was actually submitted to it. And, again, all the defense needs to do for that first argument is provide some slight evidence, and it's not to the circuit court to weigh the credibility of that evidence. And especially with gunshots and trying to determine the mental state of both the shooter and whether or not this actually was shot at Officer Logan, given how close a gunshot needs to be at the victim, these are questions that need to go to the jury to determine, and the circuit court took that away from the jury in this case. Justice Kavanaugh, anything further? Any further questions? No, thank you. Okay. All right, Mr. Wittrig, you'll have time on rebuttal. Thank you very much. Mr. Friedland? Thank you. Good morning, Your Honors. My name is David Friedland from the Office of the Appellate Prosecutor. I'm representing the people of the state of Illinois in this matter. May it please the court and counsel. The issue, obviously, issue number one is the threshold issues, whether the trial court erred here. Your Honors, no, you can affirm on any basis, and, Justice Kavanaugh, you were just inquiring as to the trial court accepting the state's position of the evidence that the gun was pointed at, at the officer. There's no evidence of recklessness here. There is none. The only evidence, so counsel says there has to be slight evidence. Well, there's zero. The only evidence that the gun was shot up in the air was defendant's self-serving statement that was non-responsive to a question in the first trial, his admission. And defense counsel, you have to go to E1437, Exhibit 1437 of his transcript. His own attorney said, do you have any personal knowledge of how Austin Woods shot the gun by observation? And the defendant says no. He did not say that he saw the gun shot up in the air. He didn't say he shot the gun in the air. There is zero evidence of anybody shooting it in the air. The only evidence that counsel wants to rely on and defendant wants to rely on is the lack of recovery of the bullets, that there weren't any bullets recovered. Well, the state addressed that. They brought in Officer Johnson, who said it's pretty common not to have the bullets recovered. They did an exhaust, and that's unimpeached, that it is common not to have the bullets recovered. And then the state also, differing from the first trial to the second trial, brought in, I point your honors, to the fact that the evidence actually does support that the gun was fired in the direction of the officer. It's not at, it's in the direction of. I direct your honors to the map, where the gun was fired from. There's houses in both directions to the south. Woods testified at this trial. He did not testify at the first one. He said where he went. The officer took you through exactly where he was going. He said that he came around the third or fourth house in the alley, stepped into the light, in the street light, and you can see on the map that that's a big clearing to the southeast of the deli star, and that's when the shots rang out. And he said he saw the shots, and this is the crucial evidence. They were at four feet high. The defendant's 5'9 from the PSI. Four feet high is not up in the air. I had a good time measuring myself. 5'9, if you shoot the gun up in the air and you're standing, you're shooting it next to your face. You're shooting it, and you would have to be kneeling and also shooting it up. Even that doesn't get you there. That's strong circumstantial evidence for you, but you suggested it could have been kneeling. It could have been kneeling. I mean, it's merely circumstantial evidence. There's other possibilities as to what could have occurred there, are there not? Well, Your Honor, the circumstantial evidence of it going up in the air, there isn't any. And the testimony of the ballistics expert, combined with what Officer Logan testified to, rebuts any suggestion that it went up in the air. He said there's a kneeling. This isn't a question of what the defendant's evidence is. This is a question of how strong the state's evidence is. Yes. Where is the evidence that it was pointed up in the air? The ballistics evidence said that if it was pointed in the direction, whatever direction it is, there would be a linear pattern. Officer Logan testified that the gun and he saw bursts. Officer Johnson, the firearms expert who went into much more detail about ballistics and firearms and muzzle flashes than at the first trial, explained that it would be a circular light like a firecracker, a burst. Officer Logan described three bursts of light at chest level, four feet up, sure. If it was a linear pattern and the gun was going up in the air, he's not seeing a burst. He's seeing a linear pattern going up in the air. That's just not the testimony. So if we're relying on the ballistics evidence for evidence that this gun was shot in the air, it's not there. It's not there. There's no evidence that the gun, nobody shot, anyone shot the gun in the air? No ballistics evidence said the gun was shot in the air? There is nothing that says the gun was shot in the air. And I believe, as Justice Zinoff pointed out, he's not saying he shot it. He could have. He didn't. He's gone with the defense of I didn't shoot the gun, and he has to because he testified at the first trial. He's gone with I didn't shoot the gun. He also didn't even go with I saw Wood shot shoot the gun because he couldn't have. And to that point, whether Wood shot the gun, he didn't. And you know this from the video. If you look at the video, the amount of time that the defendants and the defendant's story at the first trial, and which was admitted, was that he runs to the bed. He gets the gun from Parrott, which is visible on the video. He runs to the back in the same direction. That's visible on the video. He is gone for seconds. And before he's back in the scene, you see him disappear from the scene right where the area and the gun was found. And he is back within five seconds and running back towards the towards the store. His story was that he gave the gun to Wood, who was running away from the office. They had some interaction and transaction where Wood then gave him $2,500, and he had a soda in his hand. There's no way that happened in ten seconds or in five seconds. It's not plausible. It's an incredible story. Plus, again, he doesn't say Wood shot the gun into the air. He just doesn't say it. So there's just no evidence. This is akin to the self-defense claim of I didn't commit, I didn't shoot the gun, but if I did shoot it, I shot it in self-defense. That doesn't get you that instruction, and it shouldn't get you and didn't get you the reckless discharge instruction here because he went with a different defense and because there's no evidence that supports it. Counsel relies a lot, since we are in the plain air and the closely balanced governs this issue, counsel makes much of the fact that it was closely balanced in the first case. The justices found that it was a closely balanced case. Well, this isn't that case. The main issue as to why the justices found that it was closely balanced in the first case was that Wood didn't come in to rebut his testimony. Paragraph 61 of the initial opinion, Wood never rebutted anything that the defendant said he gave him the gun and that he shot it. Well, what did the state do? The state brought in Wood, and Wood's testimony was expressly clear, and it makes complete sense. There's no way Wood says, I ran. I showed the officer. It's all visible on the thing. I ran south on Arago. I cut through a yard, just like Officer Logan says, and then Wood says I went north, which makes sense. It wouldn't make sense for Wood to cut right back to where the officer's squad car was. He says he went north through the alley. That's where Officer Logan was going, and he went to his aunt's house and then Harris' house, another person's house, not Harris' house. I think it was Mack's house. But Wood said he told me he shot. Wood didn't affirm the gun. There was no cross-examination of Wood about this transaction in the back, and there couldn't be because Wood was going to deny it because it just didn't happen. And so Wood's testimony is exactly what the trial court or the appellate court in the prior deemed not closely balanced. You now have Wood specifically disclaiming I didn't shoot the gun, I ran, I didn't shoot it. So this isn't a closely balanced case. Additionally, the additional evidence in this case is the ballistic evidence. The muzzle flashes were much more testified to about why the bullets weren't recovered. Well, Officer Johnson explained that bullets are common not to recover bullets. What about the linear pattern in the air if it was shot up in the air? He said that if it was shot in the direction of somebody, it would look different, but it would seem circular. The state presented additional evidence in this case, and the defense presented less evidence in this case. This is not a closely balanced case. The video evidence, the layout of the map and the testimony, the fact that Wood testified, all of that defeats the closely balanced analysis. There's no question that the defendant is the one who shot the gun and that there's no evidence that he shot it in the air. Additionally, the reckless discharge instruction is not a reckless discharge instruction for if whether Wood fired it into the air. The recklessness goes to the defendant's mental state. You have to have some evidence of the defendant's mental state that he, the charges that he knowingly discharged in the direction of Officer Logan. The lesson included says I discharged a gun, but I did not discharge, I did so in the air, I did so recklessly. He's never put his mental state at issue. He could have, but he did not. There is zero evidence of anything that reduces the defendant's mental state to recklessness. Counsel relies, appointed your honors to People v. Jones, the 2025 case that in all of the cases where the mental state and recklessness, the courts discuss recklessness and the giving of that instruction, all of those cases, including Jones, the defendant admitted firing the gun. And the defendant in Jones admitted firing the gun to the victim said, well, I closed my eyes. I don't often went up. I don't know if it went down. Well, the defendant admitted firing the gun. He said he did so earlier and he fired it into the ground. So in that case, Jones admitted firing the gun. And plus, in that case, unusually, he was challenging his attorney's decision to ask for the reckless discharge instruction, which he was ultimately convicted on. And that just shows that he because it exposes you to liability here. The defendant did not have the exposure. I mean, he didn't have the exposure to the recklessness, but he didn't offer anything that said that he that he had committed that his mental state was lower. So there was no error there. And even if there were even if somehow there was, there was the evidence isn't closely balanced. And so that basis for reversal, we would ask you to reject that. Moving to unless there's any further questions on the recklessness is issue one. I'll address issue two. The seeing none. The plea agreement with Mr. Anderson, the state in its brief cited people versus Sims that lays out the law in Illinois. Illinois Supreme Supreme Court case, it says that there must be some leverage in some timely. There must be some sort of control or some leverage over the defendant that there's something to gain and something to lose. And quite simply, four years later, after that plea agreement was entered, there isn't council points to the possibility of perjury. Well, that exists any time that somebody testifies that a first trial that remote speculative control by the state certainly isn't an abuse of discretion, which is the standard that that that needs to be that this claim needs to be reviewed under. So the trial court made the correct decision there that the plea agreement was too tangential in time, not relevant. And even if it had been admitted, he was still impeached with his other felony convictions. And counsel's right. He is a jailhouse informant. I noted in our in our response brief Anderson's testimony. He is a jailhouse informant. The jury knew that he said he was in custody in the bullpen when he overheard the conversations. There's no real question that he wasn't. But what's key about Anderson's testimony is not just that he said he busted at the police. He wasn't there. He's not an occurrence witness. What the defendant said to him. What is key is that there's no doubt that Anderson overheard a conversation between the defendant and the other individual. Everything Anderson testified to was pretty much corroborated right down to the soda can. He knew a soda was involved. He knew that there was two women involved. He knew that there was that this took place at a store. Anderson knew a heck of a lot of details. So when you look at corroboration and say that Landerson is the only one who actually said that the defendant busted at the police and shot at the police. Well, again, he wasn't there, but he certainly knew a heck of a lot of details. So his credibility is actually enhanced by the fact that he knew all those details. And they the defense, I think counsel just said, well, the state didn't bring in Heywood to corroborate that. I don't really understand that argument because Heywood is testified at the first trial that he was the defendant's friend. The appellate court in addressing Heywood's testimony founded almost completely useless in the fact that he was a convicted murderer and that he was the defendant's friend. It would have said anything. So the state bringing in Heywood to corroborate Anderson's testimony that the defendant said these things makes very little sense. Regardless, again, you end up in the closely balanced argument. I'm not going to reiterate my points. As to that, unless there's any questions about issue 2, I'll continue moving forward. One last point was, again, I didn't make those 4 years in between Anderson's testimony. He was under no obligation to come in there. Counsel points to the state's closing arguments. You have to look at the closing laws. You have to look at the closing arguments in the entirety. Did the state harp on the and counsel did not accurately represent the state's arguments. He left out the predicate, which I pointed out in the brief that the initial conversation or the initial statement by the argument by the state was either we brought in for witness who said either defendants admitted shooting at the place or shooting shot the gun or shot at at at the officer. That's an important distinction. And more importantly, the state didn't harp on that. The state never said for individual people said that the defendant admitted shooting directly at officer Logan. The officers did the jury heard the evidence. The jury was admonished properly that what the lawyers say are in evidence, even in the middle. I believe of the state's argument, there was the state read or the court read managed the jurors that they're the believe that the guardians of the believability of the witnesses. And they're to remember their own testimony. So there's really no harm or anything that the state set an argument. Everything in the state did say it was aside. I will acknowledge that they did state that Miss parrot said that he shot at the shot at the police reviewing this parents testimony. That may have been a misstatement, but that wasn't harped on. That wasn't what moved the needle here. Even if you accept that there's nowhere here in the closing argument, the state and the state went back to the, to the, the ballistics evidence, which counsel says was inaccurate. Officer Logan testified. It was a burst. 3 Logan testified to 3 bursts of light under 2 seconds. Officer Johnson said, if it was viewed straight on, it would look like a firecracker. Officer Logan described a burst and the state said that adds to the straight on. And again, it does not have to be straight on. Again, I'll go back 1 more time to the map Southeast where the, where the defendant shot. The gun is with Southeast of officer Logan's position. It's a clearing. There's buildings. The food Mars to the north. The houses are to the, to the south. The only place the defendant can fire. The gun is somewhere in a somewhere Southeast direction. That's in his direction. He saw muzzle flashes. He came around the corner. He stepped into the light. It looks like an assassination. That's what it looks like. And that's the evidence that the jury had. And that's because that's what it was. He wasn't shooting in the air to do that. But that the state's arguments there about the ballistic fire were not inaccurate. They're reasonable inferences from the from the entire argument from the evidence. And there really was no error from what the state argued during closing the state. The defendant, there's just choosing isolated remarks. The state there was synthesizing the entire evidence is synthesizing the arguments and summarizing. So, there's no basis for in the closing arguments for for reversal or a neutral there. So, unless there's any questions about argument 3, I've got a couple moments left. I'll touch on argument for the ineffective assistance. On that point, I noted in our brief, the parties dispute the standard of review as to the ineffective assistance of council claim and crank. I think this court has an opportunity to clarify that in the reply. In our brief council, did it acknowledge the court's recent decision in people that says that the standard here is when there's a full been a full crankle hearing the standard is manifestly erroneous and the court's conclusion here about council's arguments was not manifestly erroneous. Council also says, somehow, none of none of especially miss parents. Miss parents. The issue regarding Miss parrot was not preserved. Council says that the state followed a response of pleading, discussing Miss parents that the response of pleading acknowledge that the defendant was raising a claim of ineffective assistance. The defendant does not provide any evidence as to this supposed false testimony. The defendant does not show how defense council provide failed to provide reasonable assistance. That argument wasn't developed. I don't know how we could argue it here. It wasn't developed at the hearing. It wasn't claimed in the defendant's motion for new trial. It simply wasn't there. And therefore, the court's decision on whether or not the defense council was ineffective was not manifestly erroneous. I've included defense council raised a few other council raised a few other minor points, but I would call extremely minor points of impeachment as far as Mr. Anderson's testimony about the soda pop can and McDaniels testimony about who was present when the defendant made a debt, allegedly inculpatory statement in the police up in the office or in the police station. I've addressed those in the brief, and I'm not going to belabor those points unless your honor has questions on those ensure your honor. This is not the 1st trial. This is a different. This is a different standard. Different evidence was presented. There's no evidence here that there was recklessness. The defendant didn't do that. There was no errors start to finish here. That would merit reversal in a new trial here. And so, for those reasons, judging those contained in your justices for those contained in my brief, I'd ask you to affirm the defendant's convictions and sentences. Thank you very much. Council. Mr. which make your reply. Thank you. Your honors. I want to briefly just touch on the state's argument that. Regarding point for about when you parent that not being an ineffective assistant counsel claim the state overlooks that in a hearing before the circuit court, the hearing immediately preceding. Hearing Mr. Harris and the court have a discussion about these claims generally in the court. This is on 3062 of the transcript. The court tells him that or Mr. Harris asked that for proceeding with these crankle claims. I'm accusing these other claims. I'm accusing the state of do they matter in the court is tells him that has to be an effective since a council claim. But then Harris points out, but that's the problem. The council didn't. He denied the right to counsel because he ignored these violations that the state that transpired during trial. And the court said, that's a pretty good response. And then the court thereafter says, essentially, that it will consider the entire motion given given that the basis of this is that he's accusing his counsel, turning a blind eye to the state's allegations. And so, so I think it was understood to all parties below that he that these were either ineffective assistant claims directly alleged, or they were alleged that his counsel was turning a blind eye to certain deficiencies. Now, getting back to the 1st argument, the state, the state argues that there was absolutely no evidence that the firearm was discharged in the air. But I think the strongest inference from the evidence and the lack of bullet strikes near officer Logan, or any bullets being found behind him would be that the gun was fired in the air or in any other area. The officer search for several hours in the testimony before the court was that generally when a gun is pointed and aimed, it goes where it's pointed. And so I think the, and even if the, there is another possible inference from the evidence, and that is that the, that the officer just didn't find the bullet, even though it was somehow still fired at officer Logan. And if we're debating between reasonable inferences, that would still support both that the evidence is closely balanced, and it would support giving a, this instruction to the jury for them to make the ultimate resolution here of whether or not the, the shooter acted recklessly. And even though, even though Harris testified at the 1st trial that he didn't have, he didn't personally observe the firearm being discharged in the air, and that instead, I believe, later in his testimony, he explains that everything he knew about the shooting came from talking with others. There was no objection to that evidence. It was presented. It was before the jurors. There's no limiting instruction. They can consider it for whatever purpose they want. And again, for this first point, the evidence doesn't have to be credible. There just has to be some slight evidence in the record. And so, and the state talks quite a bit about the gunshot being 4 feet high in the air. Well, first of all, officer Logan was clear that it was about 4 feet in the air. It wasn't precisely 4 feet in the air. He was over 40 yards away, and he didn't just stand and watch the muzzle shots. He dove behind cover, and so he is estimating at a very far distance while he is moving to the ground. And so, so I, it's not precise, and he even admitted that it's about, not that it's direct, but even if it is 4 feet, and we take that as true, that doesn't mean that the firearm had to be discharged at him or in his direction. One can fire a gun at 4 feet in the air in any direction. And the testimony was pretty clear that you can see a muzzle flash from any direction. That was in the testimony by Johnson. And Logan also agreed that he could not determine the direction of the gunshot from the muzzle blast. And so the fact that this, that the gun was shot from 4 feet in the air doesn't provide any basis to conclude that the gunshot was actually being directed at officer Logan or being fired in his direction. And even though, and I, I see that I'm out of time, so if there are no other questions, and I would ask that this court refers to remain for a new trial. Thank you, your honors. Thank you very much. Thank you, counsel, both of you for your excellent arguments this morning. The court will take the matter under advisement and render a decision in due course. The court stands adjourned at this time.